UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KYLE JAMES NORTH,

          Plaintiff,          Case No. 10-11377

v.          Honorable Julian Abele Cook, Jr.

MACOMB COUNTY, MACOMB COUNTY
SHERIFF'S DEPARTMENT, MACOMB COUNTY
JAIL, SHERIFF MARK A. HACKEL, and JOHN
DOE,

          Defendants.

## ORDER

This case involves accusations by the Plaintiff, Kyle James North, who contends that the Defendants (1) deprived him of his fundamental rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, in violation of 42 U.S.C. § 1983; (2) subjected him to cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution; (3) engaged in separate violations of his basic rights as guaranteed by the First and Fourteenth Amendments; and (4) committed a variety of torts under Michigan's common law, which include acts of false imprisonment as well as assault and battery.

In essence, this lawsuit arises out of the Defendants' alleged malfeasance when they illegally detained him in the Macomb County (Michigan) Jail for a period of at least six (6) days longer than authorized by the terms of his jail sentence.[1]

---

[1] In his complaint, North alleged that the Defendants had detained him "in excess of eight (8) days beyond His [sic] release date by transferring him to a detox ward where he sat for an additional eight (8) days." (Compl. ¶ 15). However, in his response to the Defendants' dispositive motion, he states that all parties agree that he was held for six days beyond his

1

Currently pending before the Court is a motion by the Defendants (filed on December 1, 2010) for the entry of a summary judgment as it relates to North's complaints in this cause. Fed. R. Civ. P. 56 (c).[2]  For the reasons that have been stated below, the Defendants' motion will be granted.

I.

North is a twenty-year-old resident of Chesterfield, Michigan, who lives with his grandparents, a twin brother, and his aunt and uncle. Although the Defendants have set forth a lengthy analysis of North's prior arrest record, the Court finds that only some of his criminal history is relevant here. Before being placed in custody on the charges that relate to the current lawsuit, he spent approximately two days in the Macomb County Jail for minor offenses that had been committed by him prior to reaching the age of eighteen. The last case from his youth included an arrest (unknown date) in New Haven, Michigan, for being a minor in possession of alcohol. According to North, he pled guilty to this charge and received a probationary sentence of one year.

In November of 2008, North was arrested in Chesterfield Township, Michigan, based on a charge that he had illegally used a credit card. He remained in custody in the Macomb County Jail for five days until a bond was posted by his grandparents. This arrest led to new allegations that

---

release date.

[2]The Court notes that the recitation of the facts which have been advanced by the Defendants is markedly different than those pled by North in his complaint. However, relying upon this more narrow view of the facts appears to be appropriate, based on (1) the deposition testimony by North, which does not include any of the more inflammatory accusations against the Defendants, and (2) North's responsive pleading, which fails to incorporate any of the facts included in his complaint. Thus, unless otherwise indicated, the Court's statement of the facts will not incorporate elements from the complaint unless those facts are also supported by the record.

North had violated the terms of his probation - a charge to which he pled guilty on December 1, 2008, in the 42-2 District Court of Michigan. As a result, he received a ninety (90) day custodial sentence, which the parties agree should have yielded a release date of February 13, 2009.

In connection with the criminal charge involving the allegedly fraudulent use of a credit card, North, after waiving his right to a probable cause hearing, was bound over on December 15, 2008, to the Macomb County Circuit Court for a trial.³ North remained in custody until the 5th of January 2009, when he was returned to the Macomb County Circuit Court where his guilty plea to the credit card charge was proffered and taken under advisement.

North, believing that he was entitled to be released from custody on February 13, 2009, after serving the ninety-day sentence for his probation violation, complained about his release to the jail deputies who offered him little help. The jailers allegedly merely told him that (1) there was "no reason" why he remained in jail, (2) their computer screen was "blank," and (3) he was next scheduled to be in court on February 19, 2009 for a sentencing hearing. According to North, this unwarranted stay in custody caused him to suffer anxiety, depression, and cold sweats because he was not given any specific date of release, which he characterized as an inmate's "worst nightmare."⁴  (North Dep. at 25).

---

³ The paperwork issued by the court bore the notation that North had been "REMANDED, in default of bond, for trial or further proceeding." (Def's. Mot. at Exh. 3). However, North testified that (1) his bond for this offense had never been revoked, and (2) the parties never discussed his bond status during the December 15th hearing.

⁴North's testimony regarding the impact of his incarceration was significantly less severe than the allegations in his complaint, which accused his jailers of failing to read him his *Miranda* rights, neglecting to fully inform him of the charges made against him, stripping him of all of his clothes and furnishing him with only a small blanket with Velcro strips to cover himself, placing him in a cold, dirty, urine-scented jail cell with other male inmates who harassed him while his body and private parts were exposed, and then demanding without justification that he admit to

However, on February 19th, North returned to the Macomb County Circuit Court where he was released from custody after receiving a two-year probationary sentence for the credit card incident. This lawsuit followed approximately one year later in April of 2010.

II

The Defendants seek the entry of a summary judgment on the basis of Fed. R. Civ. P. 56(c). A case may be resolved by way of a summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* In exploring such a request, the district court must view the evidence in a light that is most favorable to the non-moving party. *60 Ivy Street Corp. v. Alexander*, 822 F.3d 1432, 1435 (6th Cir. 1987).

An issue is "genuine" if it contains evidence upon which a jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of proof rests upon the moving party to affirmatively demonstrate the absence of all genuine issues of a material fact in the record. *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). Hence, a summary judgment must be entered only if (1) the evidence clearly suggests that the contested matter is "so one-sided that [the proponent] must prevail as a matter of law," *Anderson*, 477 U.S. at 252, or (2) the opponent fails to present evidence which is sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial. Importantly, the presentation of a mere scintilla of supporting evidence is insufficient. *Id.*

A.

The Defendants initially submit that they are entitled to a summary judgment as it relates

---

having a mental illness or condition. (Compl. ¶¶ 23-33).

4

to North's § 1983 claims against the Macomb County Sheriff's Department and Jail, contending that inasmuch as these entities are merely divisions of Macomb County, they are not separate legal entities that are capable of being sued. The Defendants' position is legally correct. *See, e.g.*, *Boykin v. Van Buren Twp.*, 479 F.3d 444, 450 (6th Cir. 2007) (rejecting claim raised against township police department, which was subsumed within township itself for purposes of establishing municipal liability); *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991) (reciting same rule for county sheriff); *Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) (noting that county jail is not entity susceptible to lawsuit, and treating plaintiff's § 1983 claim as cause of action against county).

North challenges this argument with a suggestion that these two county entities may be liable because of that which he characterizes as their grossly negligent conduct, citing to *Rhodes*, *supra*. But on the narrow issue presented here (i.e. whether Sheriff and Jail can be sued), *Rhodes* stands for the exact opposite proposition. Moreover, the Court is not aware of any authority that would permit him to proceed on his claims against the Macomb County Sheriff's Department and/or the Macomb County Jail as separate entities. Therefore, these two Defendants are entitled to the entry of a summary judgment as a matter of law.

B.

Next, the Defendants assert that all of the pending claims against Mark A. Hackel, in his official capacity as the Macomb County Sheriff, must be dismissed because they are redundant of North's allegations against Macomb County as an arm of the state. Their position represents an accurate assessment of the prevailing law. The Supreme Court has declared that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office [and] [a]s such . . . , is no different from a suit against the State itself." *Will*

5

*v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Barachkov v. 41B Dist. Court*, 311 F. App'x 863, 867 (6th Cir. 2009) (unpublished) (same); *see also Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (emphasizing distinction between suits against government officer in his official capacity versus those brought against individual in personal capacity, and opining that "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law," while official-capacity suits, "in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." (internal citations and quotations omitted)).

In response, North notes that the law in Michigan recognizes an exception for tort liability against its state officers who, through their gross negligence, proximately cause an injury to a plaintiff. Mich. Comp. Laws § 691.1407(2)(c). Nevertheless, North has not identified a single piece of evidence which establishes that Hackel (or any of the other Macomb County officers) acted in a manner that reflects such conduct, which - in order to be actionable - must be done "so [recklessly] as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(7)(a). North's attempt to resist the dismissal of Hackel in his official capacity on this basis therefore must fail.

The Court is also compelled to grant a summary judgment on any claims that North may seek to assert against Hackel in his personal capacity, inasmuch as such allegations are missing from the face of his complaint. *Wells v. Brown*, 891 F.2d 591, 592-94 (6th Cir. 1989) ("[A] complaint must indicate whether a plaintiff seeks to recover damages from defendants directly, or to hold the state responsible for the conduct of its employees. . . . It is not too much to ask that if

6

a person or entity is to be subject to suit, [he or the entity] should be properly named and clearly notified of the potential for payment of damages individually."). Moreover, to the extent that North attempts to meet this burden by complaining that Hackel acted "under the color of state law," the Court notes that he has neither pled nor proven any facts to show that Hackel actively engaged in any unconstitutional activity, which is a prerequisite for establishing supervisory liability in a § 1983 claim. *See generally Gregory v. Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) ("Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act. . . . liability must lie upon more than a mere right to control employees and cannot rely on simple negligence."). Accordingly, Hackel's request for the entry of a summary judgment in his favor must be granted.

C.

As the only municipal Defendant in this case, Macomb County argues that it is entitled to a judgment on North's claims under 42 U.S.C. § 1983 because, in its opinion, he has not presented any evidence that it had a policy which led to a violation of his constitutional rights, as required by *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). A municipality can only be liable under § 1983 if its policies are the "moving force" behind an alleged constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) ("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.").

In order to evaluate North's *Monell* claim against Macomb County, the Court must explore a two-pronged inquiry into whether (1) he has asserted the deprivation of a constitutional right at

7

all, and (2) the County can be said to be responsible for the identified violation. *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). For liability to attach, both questions must be answered in the affirmative. *Doe v. Clairborne Cnty.*, 103 F.3d 495, 511 (6th Cir. 1996). To satisfy *Monell*, the Sixth Circuit declares that a plaintiff must "identify the policy, connect the policy to the [county] itself and show that the particular injury was incurred because of the execution of that policy." *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir.1987) (overruled on other grounds).

Here, North has presented enough evidence under the first prong of *Collins*, *supra*, to suggest that he was deprived of a constitutional right; namely, his due process right under the Fourteenth Amendment to be released from custody upon the expiration of his sentence. *Shorts v. Bartholomew*, 255 F. App'x 46, 51 (6th Cir. 2007) ("[A]n incarcerated inmate has 'a liberty interest in being released at the end of his term of imprisonment'. . . [and] [t]his liberty interest is most often attributed to the Due Process Clause of the Fourteenth Amendment." (internal citations and quotations omitted)). However, North has not connected the extended detention to a policy or a custom within Macomb County. The Defendants correctly note that North could have presented such evidence by, for example, pointing to similar occurrences at the Macomb County Jail. A failure by Macomb County to address repeated violations could arguably have established that the County, despite being on notice of a potential constitutional deficiency in its procedures, failed to respond appropriately. However, North has not pointed to any such evidence here. Rather, he simply contends that "Sheriff Hackel established jail policy and procedure while ruling the facility with an iron fist [in] establishing all procedures." (Pl.'s Resp. Br. at 2). North asserts that "if needed" he can prove the consistency of the practice of detaining inmates unlawfully based on the

sheer volume of lawsuits currently pending against Hackel. Although the Court is doubtful as to whether such evidence would satisfy the requirements of *Monell*, it is clear that North has not discharged his burden in a manner that is required to resist the entry of a summary judgment.

Furthermore, North has not persuaded the Court that his unwarranted six-day detention violated his rights under the Eighth Amendment to be free from cruel and unusual punishment. In order to prevail on an Eighth Amendment claim, an aggrieved inmate must first show that his injury was objectively "sufficiently serious." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998). Additionally, an inmate must demonstrate that the defendant caused the injury by acting with deliberate indifference or recklessness toward him, as opposed to operating with a merely negligent state of mind. When confronted with allegations that mirror North's claims which address the extent of his detention, courts have tended to regard such lapses as being insufficiently egregious to implicate the Eighth Amendment. *See, e.g.*, *Calhoun v. N.Y. State Div. of Parole Officers*, 999 F.2d 647, 654 (2d. Cir. 1993) (observing that five-day extension of inmate's release date did not inflict "a harm of magnitude" sufficient to warrant finding that claimed injury amounted to cruel and usual punishment). *But see Sample v. Diecks*, 885 F.2d 1099, 1109 (3rd Cir. 1989) (Eighth Amendment violation did result from nine-month detention beyond expiration date). And even assuming that the unwarranted six-day detention here was actionable, North has not presented a sufficiency of evidence from which a jury could find that the County officers acted with deliberate indifference toward his inquiries. Yet, absent such a showing, North's § 1983 claims that are rooted in a claimed violation of the Eighth Amendment fail as a matter of law.

### D.

The Court also grants the request by the Defendants for the entry of a summary judgment

on Count III of the complaint, wherein North alleges deprivations of his rights under the First and Fourteenth Amendments. He accuses the Defendants of giving false information about him to a judge, and, in so doing, raises a number of disturbing allegations that are not substantiated by the record in this action. (Compl. ¶¶ 66-76 (alleging, for example, (1) detention was based on false information in arrest warrant, and (2) retaliation based on his exercise of First Amendment rights)). Inasmuch he has not presented any evidence whatsoever to support these claims, the Defendants are entitled to a summary judgment on this aspect of this lawsuit as a matter of law.[5]

E.

Finally, the Defendants submit that, inasmuch as Macomb County is governmental entity that was engaged in the exercise of a governmental function (i.e. maintaining and operating the jail), under Mich. Comp. Laws § 691.1407(1), it is entitled to immunity from North's tort claims in Counts V and VI for false imprisonment and assault and battery. This statute provides, in relevant part, that "[e]xcept as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." *Id.* A "governmental agency" is defined as a state or a political subdivision. According to Mich. Comp. Laws § 691.1401(a)(d), a "political subdivision" includes a county. Thus, if Macomb County was engaged in the exercise or the discharge of a governmental function during the times that have been outlined above, it is immune from tort liability unless a statutory exception applies. Michigan courts have held that governmental agencies have broad immunity, and that the exceptions to that immunity are narrowly construed. *State Farm Fire &*

---

[5] As the Defendants note, North, while not identifying a Count IV in his complaint, skipped to Count V.

*Cas. Co. v. Corby Energy Servs, Inc.*, 722 N.W.2d 906, 913 (Mich. Ct. App. 2006).

The operation of a jail has been consistently regarded as a uniquely governmental function. *See generally Roberts v. City of Troy*, 429 N.W.2d 206, 210 (Mich. Ct. App. 1988) ("The operation of a jail or detention facility is a governmental function, for which a [county] is generally immune."); *Wojtasinski v. Saginaw*, 254 N.W.2d 71, 72 (Mich. Ct. App. 1977) ("Generally, the operation and maintenance of a jail is a governmental function."). Moreover, Michigan law does not recognize an intentional tort exception to governmental immunity that specifically applies to government agencies. *Harrison v. Dir. of Dep't of Corr.*, 487 N.W.2d 799, 802 (Mich. Ct. App. 1992). To the contrary, the exceptions to governmental immunity in § 691.1407 extend solely to its officers and employees - but not to the government agency itself. *See Gracey v. Wayne Cnty. Clerk*, 540 N.W.2d 710, 714 (Mich. Ct. App. 1995), abrogated on other grounds by *Am. Transmissions, Inc. v. Attorney Gen.*, 560 N.W.2d 50 (Mich. 1997). Because the Court is not persuaded that a statutory exception applies to Macomb County under the circumstances in this case, the Defendants are entitled to the entry of a summary judgment on these remaining counts of North's complaint.

### III.

Therefore and for the reasons that have been stated above, the Defendants' motion for a summary judgment is granted in its entirety. North's lawsuit is dismissed with prejudice.

IT IS SO ORDERED.

Date: September 30, 2011                              s/Julian Abele Cook, Jr.
                                                     JULIAN ABELE COOK, JR.
                                                     U.S. District Court Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 30, 2011

s/ Kay Doaks
Case Manager
